**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**DONALD WAYNE BULLARD**                                    **PETITIONER**

**v.**                                                                  **No. 1:19cr42-MPM**

**UNITED STATES OF AMERICA**                                **RESPONDENT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on the motion of Donald Wayne Bullard to vacate, set aside, or correct his sentence under 28 U.S.C.A. §2255 and supplemental pleadings. ECF docs. 42, 46, 47, 48, 50, 51, 53, 54, 55, 56, 57, 58, and 59. The government has responded, and the matter is ripe for resolution.

**Facts and Procedural Posture**

In June of 2018, Bullard was wanted for a charge of aggravated assault arising from an incident in which Bullard threatened his sister with a firearm. ECF doc. 34, pg. 4. On June 21, 2018, the Gulf Coast Regional Fugitive Task Force and the Tallahatchie County Sheriff's Department went to Bullard's residence and arrested him. *Id*. While conducting a protective sweep, the officers located a Smith and Wesson M&P 15 5.56 mm rifle. *Id*. at 5. Officers were told that Bullard also had an automatic pistol, which was currently in pawn. *Id*. A female who was in the residence at the time of the arrest stated that Bullard had used methamphetamine two or three days prior, while Bullard confirmed he had used methamphetamines in the last day or two. *Id*. Bullard was told he could be charged as a habitual drug user in possession of a firearm and agreed to forfeit the Smith and Wesson rifle. *Id*. Following this arrest, Bullard was not charged as a habitual drug user in possession of a firearm but was charged in Iuka Municipal

Court with failure to stop or comply, simple assault, aggravated assault/use weapon, domestic violence, and disorderly conduct/failure to comply, based on earlier offenses. *Id*.

On March 10, 2019, the Iuka Police Department was dispatched to Bullard's residence after receiving a complaint that Bullard was shooting guns in the city limits. ECF doc. 27, pg. 13. Once officers arrived, Bullard refused to cooperate and a standoff ensued. ECF doc. 34, pg. 5. Over the course of the standoff, the Iuka police department, the sheriff's department, the Mississippi Highway Patrol, and the MHP SWAT team arrived on the scene. *Id*. To facilitate communication with Bullard, law enforcement enlisted the help of two of Bullard's friends, but Bullard refused to exit the residence. *Id*. at 5-6. One of the friends told law enforcement Bullard was under the influence of a controlled substance. *Id*. at 6. During the standoff, Bullard fired gunshots from the residence, one of which seemed to be aimed at a law enforcement officer who was attempting to photograph the rear of the house. *Id*. After several hours, a search warrant was issued for the residence, the SWAT team gained entrance to the house using specialized equipment, and Bullard was arrested. *Id*. "Firearm rounds of live ammunition, spent shell casings, suspected methamphetamine, and drug paraphernalia were retrieved from Bullard's residence immediately following the standoff." ECF doc. 27, pp. 13-14. Specifically, two firearms, a .40 caliber Ruger pistol and a Smith and Wesson rifle were recovered and were identified by Bullard's sister as having been in his possession on March 7, 2019. ECF doc. 34, doc. 7. An ATF agent verified that the firearms recovered from the residence were not manufactured in Mississippi and had traveled in interstate commerce. *Id*. at 14.

On May 15, 2019, Petitioner Bullard was indicted in a superseding indictment for two (2) counts of possession of a firearm by an unlawful habitual user of a controlled substance. ECF doc. 21. Specifically, Bullard was indicted for possession of (1) a Smith and Wesson, model

M&P 15, 556 caliber semi-automatic rifle, serial number SN49088 in Count I (arising from the June 21, 2018 incident) and (2) a Smith and Wesson, model M&P 15, 556 caliber semi-automatic rifle and a Ruger, model P91DC, .40 caliber pistol in Count II (arising from the March 10, 2019 incident). *Id*. On June 6, 2019, Bullard pleaded guilty to Count II of the superseding indictment. ECF doc. 26.

At his plea hearing, Bullard's attorney noted that Petitioner had a history of mental illness, brain injury, and post-traumatic stress disorder, but stated, "I don't have any reason to doubt his competency." ECF doc. 27, pg. 4. Further, Bullard averred that he had fully discussed the case with his attorney and was satisfied with his attorney's representation and advice. *Id*. at 4-5. After the Government described the charges against Bullard and the elements of the crime, Petitioner acknowledged he was fully aware of the charges and had no questions. *Id*. at 6-7. Bullard stated he understood the potential penalties and the plea agreement had been accurately described. *Id*. at 8-11. After the Government set forth the evidence against Bullard, Bullard admitted that he had indeed committed the crimes described by the Government. *Id*. at 13-14. The Court found that Bullard was competent and knowingly and willingly pled guilty and accepted Bullard's plea on Count II. *Id*. at 14-15.

At the sentencing hearing, the Government called Bullard's sister, Renee Sandlin. ECF doc. 41, pg. 4. Ms. Sandlin testified that Bullard had used cocaine and methamphetamine since 2005 or 2006 and he had a temper. *Id*., pg. 6. The defense called Bullard's first-cousin Eddie Goss, who testified that Bullard was a veteran who shot firearms to relieve stress. *Id*. at 14. Bullard also made a statement to the Court. *Id*. at 25. After hearing all the testimony and statements, the court adopted the pre-sentence report, considered Bullard's extensive criminal record, and noted that Bullard was already engaged in anti-social behavior well before he began

his military service. *Id*. at 28-37. Bullard was sentenced to serve a term of 78 months on Count II of the superseding indictment with three (3) years of supervised release. *Id*.

## Scope of §2255 Review

There are four grounds upon which a federal prisoner may seek to vacate, set aside, or correct his sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence exceeds the statutory maximum sentence; or (4) that the sentence is "otherwise subject to collateral attack."  28 U.S.C. §2255; *see United States v. Cates*, 952 F.2d 149, 151 (5th Cir.1992).  The scope of relief under §2255 is the same as that of a petition for a writ of *habeas corpus*. *Cates*, 952 F.2d at 151.

A defendant seeking relief under 28 U.S.C. §2255 may not do so to raise issues that could have been raised on appeal.  *United States v. Walling*, 982 F.2d 447, 448-449 (10th Cir. 1992).  A petitioner may not raise constitutional issues for the first time on post-conviction collateral review unless he shows cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error.  *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  The burden of showing "cause," an "objective factor external to the defense," rests with the petitioner.  *McCleskey v. Zant*, 111 S.Ct. 1454, 1470 (1991).  No other types of errors may be raised on collateral review unless the petitioner demonstrates that the error could not have been raised on direct appeal, and if not corrected, would result in a complete miscarriage of justice. *Pierce*, 959 F.2d at 1301; *Shaid*, 937 F.2d at 232.  Further, if a claim is raised and considered on direct appeal, a defendant may not raise the issue in a later collateral attack.  *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

4

**Bullard's Allegations**

In his petition (ECF doc. 42), Bullard raises the following grounds for relief (as summarized by the Court):

Ground One:  The guilty plea was involuntary.

Ground Two:  Warrantless seizure of evidence.

Ground Three: The March 10, 2019, search warrant was improper because the home searched belonged to Bullard's mother.

Ground Four:  Ineffective assistance of counsel for incorrect advice regarding sentencing and inadequate advice regarding the charges.

In ECF docs. 46, 47, 48, 50, 51, 52, 53, 54, 55, 56, 57, 58, and 59, Bullard provides additional argument in support of these claims. The Court notes that Bullard did not raise any of these claims in his direct appeal.  As such, Bullard's claims, other than his allegation of ineffective assistance have been procedurally defaulted. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  However, Bullard's claims also lack merit as will be discussed below.

**Bullard's Guilty Plea was Proper**

In his petition and supplemental pleadings, Bullard makes several allegations that his guilty plea was unknowing and involuntary. Specifically, Bullard claims that he was not fully aware of the evidence against him or of the rights he was forfeiting by pleading guilty. The Supreme Court has held that, in determining the voluntariness of a guilty plea, a court must consider the relevant circumstances surrounding the plea. *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970). The Brady Court further held:

The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:

"(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises

5

to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." [internal citations omitted].

*Brady*, 397 U.S. at 755, citing *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958).

During his plea hearing, Bullard testified under oath that he had received a copy of his indictment, had fully discussed those charges and the case with his attorney, and was fully satisfied with his counsel's representation. ECF doc. 27, pp. 4-5. Bullard also acknowledged that he was waiving his right to a trial by jury, to cross-examine the Government's witnesses, and to call his own witnesses. *Id*. at 5-6. Further, the Government stated the charge and the elements of the crime on the record and Bullard stated that he had no questions about his charge. *Id*. at 7-8. The Government also stated the substance of the plea agreement on the record and Bullard testified under oath that this statement was accurate. *Id*. at 9-11. Moreover, after the Government described the evidence against him, Bullard acknowledged that he committed the crime for which he was being charged. It is clear from the record in this case that Bullard knowingly and voluntarily entered his guilty plea and that this proper plea must stand.

**Bullard's Challenge to the Seizure of Evidence Lacks Merit**

Next, Bullard alleges that the search warrant executed on June 21, 2018, which led to the seizure of the Smith and Wesson M&P 15 5.56 mm rifle that was forfeited by Bullard was improper. However, this weapon was the subject of Count I of the superseding indictment, which was dismissed by the Government. In this case, Bullard pleaded guilty to Count II of the superseding indictment, which referenced a Smith and Wesson rifle and a Ruger pistol that were seized on March 10, 2019. The possession of this firearm charged in Count I was used in the

6

calculation of his criminal offense level; however, Bullard did not object to the pre-sentence report. ECF doc. 41, pg. 3. "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007), citing *United States v. Valencia,* 44 F.3d 269, 274 (5th Cir.1995). Bullard has provided nothing to support his challenge to the seizure of the firearm in Count I or it's use in his pre-sentence report. Such "conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). Moreover, in *United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003). the Fifth Circuit has held that a §2255 petitioner who has had a full and fair opportunity to litigate his Fourth Amendment claim in pre-trial proceedings and on direct appeal is barred from collateral review of that claim by *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Bullard had a full opportunity to challenge this seizure on direct appeal, but did not raise the issue. Therefore, Bullard's claims in Ground Two must fail.

### The Weapons Charged in Count II Were Validly Seized

Bullard also challenges the seizure of the two weapons charged in Count II of his indictment, alleging that the search warrant was invalid as the residence belonged to his mother. Again, Bullard had a full and fair opportunity to raise this issue on direct appeal but did not. As such, this claim is barred from collateral review pursuant to *Ishmael, supra*. Further the record indicates that these weapons were recovered during a protective sweep, and Bullard has presented no evidence to challenge this finding. *Ross*, 694 F.2d at 1012. As such, Bullard's challenge to the seizure of the weapons charged in Count II must fail.

**Bullard Received Effective Assistance of Counsel**

Finally, Bullard alleges that he received constitutionally ineffective assistance of counsel because counsel told him he would be sentenced to time served and probation and because he was not adequately informed of sentencing enhancements. The U.S. Supreme Court has ruled that claims of ineffective assistance of counsel are governed by the standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland, supra,* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of the claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). A determination must be made of whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). Further, "the defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

Counsel's services are not evaluated in a vacuum, and all circumstances are considered in

determining whether the performance was reasonable under prevailing professional standards.

*Lavernia*, 845 F.2d at 498.  Finally, there is a strong presumption that counsel has exercised

reasonable professional judgment.  *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d

813, 187 (5th Cir. 1986).

　　　　To prove prejudice, Petitioner must demonstrate that the result of the proceedings would

have been different or that counsel's performance rendered the result of the proceeding

fundamentally unfair or unreliable.  In *Strickland*, the Supreme Court explained that the

defendant must make a showing that counsel's errors were "so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable," (*Strickland*, 466 U.S. at 687) and

demonstrate a reasonable probability that, but for counsel's errors, the results of the proceeding

would have been different.  *Id*. at 694.  *See also Mayabb v. Johnson*, 168 F.3d 863,869 (5th Cir.

1998); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir, 1998).  A "reasonable probability" is one

sufficient to undermine confidence in the outcome of the proceeding.  *Moawad v. Anderson*,

*supra*.  An error by counsel, even if professionally unreasonable, does not warrant setting aside

the judgment of a criminal proceeding if the error had no effect on the judgment.  *Summit v.

Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986).  A habeas corpus petitioner must affirmatively

plead this resulting prejudice.  *Bridge v. Lynaugh*, 838 F.2d 770,773 (5th Cir. 1988).

　　　　During his plea hearing, Bullard stated under oath that he was aware of the potential

penalties he faced pursuant to his guilty plea. ECF doc. 27, pg. 8. Further, Bullard acknowledged

that the sentencing guidelines were advisory and his sentence may differ from that estimated by

his attorney. *Id*. at 12.  At Bullard's sentencing hearing, the Court explained to Bullard that,

under the Guidelines, he was facing 63 to 78 months of imprisonment. ECF doc. 41, pg. 29. The Court reviewed Bullard's lengthy record. *Id*., pp. 29-36. The Court noted that none of those incidents added any criminal history points to his sentencing guidelines. The Court ultimately decided not to depart from the sentencing guidelines, and sentenced Bullard to serve 78 months. *Id*. at 37.

As such, Bullard's sentence was within the Guidelines. Bullard has offered no evidence that his attorney offered him an estimate of his sentence. As the Fifth Circuit has held

> This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial we [can find] no merit to these [claims]." *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Further, it is clear from the record that Bullard was aware that his ultimate sentence may differ from any estimates he was given. Therefore, this conclusory allegation fails to establish that Bullard's attorney was constitutionally ineffective in his advice regarding potential sentences.

### Conclusion

As discussed above, Bullard's claims lack merit, and the instant motion to vacate, set aside, or correct Donald Wayne Bullard's sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this the 26th day of February, 2021.


**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**